## GEORGE H. LEE *vs.* HOWARD FIRE INSURANCE COMPANY.

A policy of insurance against fire, issued by a stock company, stipulated that a use of the buildings insured, " at any time after the making, and during the continuance of this insurance," for any trade or business, " denominated hazardous or extrahazardous, or specified on the memorandum of special rates, in the terms and conditions annexed to this policy, unless herein otherwise specially provided for, or hereafter agreed by this company in writing, and added to or indorsed upon this policy," should avoid the policy ; and that the conditions annexed should " be used and resorted to in order to explain the rights and obligations of the parties hereto, in all cases not herein otherwise specially provided for." One of the conditions was that if, after effecting insurance, the risk should be increased by any means in the control of the assured, or the premises be so occupied, with the assent of the assured, as to render the risk more hazardous, the policy should be void. *Held*, that the use of part of the premises for a trade or business, specified in the memorandum of special rates, and not mentioned in the policy, nor indorsed thereon, avoided the policy, although the trades disclosed in the policy were also special hazards ; and that parol evidence was inadmissible to show that the use not disclosed did not increase the risk, and was in fact known to the agent of the company, who visited and examined the premises, agreed with the assured upon what facts were material to be stated, filled up the application and issued the policy.

Under a policy of insurance against fire, issued by a stock company, on a factory and blacksmith's shop, in consideration of an entire premium, and stipulating that if and so long as the premises should be used, without the written assent of the company, for certain trades, " these presents shall cease, and be of no force and effect," no recovery can be had for a loss of the shop by a fire originating in the factory, while a room in the factory is occupied, without the assent of the insurers, for one of the trades enumerated.

ACTION OF CONTRACT, commenced by Davis & Kilburn, and now prosecuted by Lee, as their assignee in insolvency, on a policy whereby the defendants (a stock company) in consideration of a premium of $46 paid by Davis & Kilburn, insured them " eleven hundred and fifty dollars, to wit, $1,000 on their chair shop, tub and pail factory, saw mill and storehouses, all connected, in Orange ; $150 on their blacksmith shop, near the above; as described in survey No. 3,607, on file at this office, which is made a part of this policy and warranty on the part of the assured." By this policy, " it is agreed and declared to be the true intent and meaning of the parties hereto, that 1 case the above mentioned premises shall, at any time after the making, and during the continuance of this insurance, be appropriated, applied or used to or for the purpose of carrying on or exercising therein any trade, business or vocation, denominated

hazardous or extrahazardous, or specified in the memorandum of special rates, in the terms and conditions annexed to this policy, or for the purpose of keeping or storing therein any of the articles, goods or merchandise, in the same terms and conditions denominated hazardous or extrahazardous, or included in the memorandum of special rates, unless herein otherwise .specially provided for, or hereafter agreed by this company in writing, and added to or indorsed upon this policy, then, and from thenceforth, so long as the same shall be so appropriated, applied, used or occupied, these presents shall cease, and be of no force or effect;" " And it is moreover declared, that this policy is made and accepted in reference to the conditions hereto annexed, which are to be used and resorted to, in order to explain the rights and obligations of the parties hereto, in all cases not herein otherwise specially provided for." Annexed to the policy were four " classes of hazards," denominated " not hazardous," " hazardous," " extrahazardous," and " memorandum of special hazards, upon which special rates of premium will be charged," in which last class were included cabinetmakers, carpenters, joiners, grist mills, " metal and other mills of all kinds," " and generally all manufacturing establishments, and all crafts requiring the use of fire heat, not before enumerated : " Also " conditions of insurance," one of which was thus : " If, after insurance is effected upon any building or goods, in this office, either by the original policy or by the renewal thereof, the risk shall be increased by any means whatsoever within the control of the assured, or if such buildings or premises shall, with the assent of the assured, be occupied in any way so as to render the risk more hazardous than at the time of insuring, such insurance shall be void and of no effect."

The application described the property substantially in the same words as the policy ; and " the said applicant makes the following statements and gives the following answers to interrogatories here put relating to the risk : 1. State the character and kind of property to be insured." *Answer.* " Building is used for making pails, tubs and chairs, and a saw mill and storehouse." " 3. Of what materials is the building constructed,

how high is it, and for what purpose occupied?" *Answer.* " Wood. Part of the building one and a half story, and part two stories. Blacksmith shop 20 by 33, one and a half story" The application concluded as follows : " And the said applicant hereby covenants and agrees to and with the said company, that the foregoing is a just, full and true exposition of all the facts and circumstances in regard to the condition, situation, value and risk of the property to be insured, so far as the same are known to the applicant, and are material to the risk."

At the trial in the court of common pleas, at March term 1853, before *Wells*, C. J., it appeared that, at the time of the making of the policy, there was, in one of the buildings covered by the policy, a grist mill, which was not mentioned in the policy, nor in any indorsement thereon, nor in the application; and the defendants contended that the policy was thereby rendered void. There was no evidence of any change in the business carried on in the buildings insured, between the time of the insurance and the time of the fire.

The plaintiff called John Field, who testified that he was an agent of the defendants, with full power to make contracts of insurance in their behalf, and was furnished by them with blank forms, signed by their president and secretary, which he was authorized to fill up and deliver at his discretion, without reference to the company for their sanction; that he was well acquainted with the premises, having previously examined them, for the purpose of insuring them in behalf of another company, and that, at the request of Davis & Kilburn for an insurance, he went upon the premises in company with Kilburn, examined the property particularly, and saw the grist mill, and made such inquiries in relation to the property as he deemed necessary; and, after Kilburn and he had agreed what was material to be inserted in the application, put down the answers as they were given, and filled up the application with such a description as he thought suitable, and Kilburn signed it and returned it to the agent, who then filled up the policy, which had already been signed by the president and secretary, and delivered it to Kilburn, and received the premium agreed upon, which

was the highest rate of premium charged for extrahazardous risks.

The defendants objected to the introduction of this evidence, and asked the court to instruct the jury that if, when the policy was made or when the fire occurred, the premises were applied to or used for the purpose of carrying on or exercising therein any business denominated hazardous or extrahazardous, or specified in the memorandum of special rates, and not named in the policy, or added to or indorsed thereon, the policy was void.

But the court admitted the evidence, and refused this instruction, and instructed the jury that, if the agent of the defendants, having full authority to make contracts of insurance, upon being applied to for this insurance, instead of relying upon representations made to him by the insured in their written application, visited the premises in order, by inspection and inquiry there, to satisfy himself of the nature and extent of the risk, and, in company with the insured, went over the property, inspected it to his satisfaction, and made such inquiries in relation to it and its uses as he thought proper, and the owners in good faith answered all inquiries without concealment, and, after the parties had consulted as to what was necessary to be stated in the application, the agent wrote the answers, and inserted whatever he saw or had agreed was material to be stated, and thereupon the agent took the premium and delivered the policy, then no omission to make a perfect enumeration of the occupations carried on in the buildings insured would vitiate the policy, provided the agent knew all the facts concerning such occupation, and purposely omitted to state them because he had agreed to consider them not essential to the risk; or provided the facts would have been known by him if he had made such inquiry and examination as it was his duty to make under the circumstances; and provided further that the facts now known were not material to the risk, that is to say, would not have occasioned the insurers to increase the premium or to decline taking the risk; that, under such circumstances, the defendants were equitably estopped from claiming that to be material which the

agent knew at the time, and omitted to insert in the application because he then agreed that it was not material.

The jury returned a verdict for the plaintiff, and the defendants alleged exceptions, upon which the case was argued at Boston in January 1854.

*G. T. Davis & C. Allen*, for the defendants.

*C. P. Huntington & G. D. Wells*, for the plaintiff. Policies of insurance are to be construed in favor of the assured. *Pelly* v. *Royal Exchange Assurance Co.* 1 Bur. 349. *Catlin* v. *Springfield Fire Ins. Co.* 1 Sumner, 434. The warranties (if any) in this case have been complied with. Warranties are to be construed strictly. The enumeration, in the policy or application, of certain occupations, is not a warranty that no others are carried on in the same building, unless the intention of the assured so to warrant appear distinctly and inevitably. If the assured limits or qualifies his answer, and the insurer accepts such limited and qualified answer, the warranty is so far limited and restrained, and the insurer is bound by its terms, equally with the assured. *Gates* v. *Madison County Mutual Ins. Co.* 2 Comst. 43.

But the doctrine of warranty has not been applied with strictness in this state to cases of fire insurance ; but the inquiry has always been whether there has been any misrepresentation, concealment or alteration, by which the insurers have been misled. *Stetson* v. *Massachusetts Mutual Fire Ins. Co.* 4 Mass. 338. *Houghton* v. *Manuf. Mutual Fire Ins. Co.* 8 Met. 114. *Underhill* v. *Agawam Mutual Fire Ins. Co.* 6 Cush. 447. Concealments, omissions, and untrue statements, which are representations merely, and not warranties, will not avoid a policy, unless material to the risk. *Curry* v. *Commonwealth Ins. Co.* 10 Pick. 540. *Columbian Ins. Co.* v. *Lawrence*, 2 Pet. 25. *Farmers' Insurance & Loan Co.* v. *Snyder*, 16 Wend. 481. *Williams* v. *New England Mutual Fire Ins. Co.* 31 Maine, 226. An omission of a fact known to the insurer will not avoid the policy. 1 Phil. Ins. (3d ed.) §§ 553, 571, and cases cited. *Wiggin* v. *Boardman*, 14 Mass. 15.

Whether the application is to be regarded as a warranty or a representation, its last clause limits it to facts material to the

risk. And the question, whether the omission is material to the risk, is to be decided by the jury. *Curry* v. *Commonwealth Ins. Co.* 10 Pick. 540. *Sexton* v. *Montgomery County Mutual Ins. Co.* 9 Barb. 191. *Masters* v. *Madison County Mutual Ins. Co.* 11 Barb. 624.

The stipulation in the policy relates only to the introduction of new occupations " after the making of this insurance ; " and there is nowhere any express warranty or agreement, nor can any be implied, in relation to the classes of hazards, having any reference to the state of the property at the time of issuing the policy. A chair shop and tub and pail factory are manufacturing establishments of the most hazardous class, and the mention of them in the policy is a sufficient compliance with its provisions. The premises were never " appropriated, applied to, or used for the purpose of carrying on " a grist mill, within the meaning of the clause in the policy. A merely secondary or incidental use of the premises for a purpose not disclosed will not avoid the policy, especially when it does not increase the risk. *Shaw* v. *Robberds,* 6 Ad. & El. 75. *Mayall* v. *Mitford,* 1 Nev. & P. 732. *New York Equitable Ins. Co,* v. *Langdon,* 6 Wend. 623. *O' Niel* v. *Buffalo Fire Ins. Co.* 3 Comst. 122. *Moore* v. *Protection Ins. Co.* 29 Maine, 97. *Lounsbury* v. *Protection Ins. Co.* 8 Conn. 459. *Wood* v. *Hartford Fire Ins. Co.* 13 Conn. 543. *Billings* v. *Tolland County Mutual Fire Ins. Co.* 20 Conn. 139. *Grant* v. *Howard Ins. Co.* 5 Hill, 10. *Boardman* v. *Merrimack Mutual Fire Ins. Co.* 8 Cush. 583.

The defendants, having clothed Field with authority to take risks, make surveys, receive applications, issue policies, and do all that was necessary to complete the contract of insurance, and held him out to the world in that light, are bound by all his acts, admissions and declarations in the premises. *Lightbody* v. *North American Ins. Co.* 23 Wend. 18. *Masters* v. *Madison County Mutual Ins. Co.* 11 Barb. 624. Field relied on his own survey, and not on the statements in the application, in estimating the hazard, and issuing the policy ; agreed with the assured upon what facts were material to be inserted in the application ; and himself filled it up. The defendants are therefore

estopped to set up any omission, thus made by their agent, as material to the risk, or as avoiding the policy. *Frost* v. *Saratoga Mutual Ins. Co.* 5 Denio, 154. *Dezell* v. *Odell*, 3 Hill, 215, 221. *Ryerss* v. *Farwell*, 9 Barb. 618. *Gregg* v. *Wells*, 10 Ad. & El. 90. *Freeman* v. *Cooke*, 2 Exch. 663. *Hicks* v. *Cram*, 17 Verm. 449. *Roe* v. *Jerome*, 18 Conn. 153. 1 Greenl. Ev. § 27.

BIGELOW, J. The effect of the evidence admitted and of the instructions founded upon it was to authorize the jury to return a verdict for the plaintiff for the amount insured by the policy, although it was proved that a grist mill was carried on in the premises at the time of the loss. This was clearly contrary to the express stipulation in the policy, and permitted the jury to substitute, in the place of the written agreement of the parties, their acts and statements prior to the execution of the policy. Upon the most familiar principle of the law of evidence, all previous verbal agreements must be taken to be merged in the written contract of the parties, made for the very purpose of embodying the terms of their contract, and designed to be the repository and proof of their final intentions. It must be presumed conclusively that the whole engagement of the parties, and the extent and mode of their undertaking, was reduced to writing, and all evidence of a previous *colloquium* is incompetent. This wise and salutary rule cannot operate harshly upon parties who read and understand their written agreements before executing them. The agreement in the policy was that the carrying on of a trade included in the class of special risks should render the policy void. This was a clear and explicit stipulation, the manifest purpose of which was to exclude parol evidence as to the danger of such occupations, and their materiality to the risk, and substitute in place thereof the agreement of the parties, about which there could not be any cavil or dispute. The evidence offered by the plaintiff, and submitted to the jury under the foregoing instructions, was in direct contravention of the written contract. It not only tended to vary it by parol evidence, but directly to contradict it. It was the assured who were estopped by their own deliberate and solemn agreement in writing, and not the defendants, who relied solely

on the terms of the contract which the plaintiff sought to enforce against them.   The recent case of *Barrett* v. *Union Mutual Fire Ins. Co.* 7 Cush. 175, well illustrates and enforces the rule of evidence excluding parol testimony, as applicable to policies of insurance, and is decisive of this case, as the facts are now presented.

We have not deemed it necessary to decide whether the policy in question would be rendered invalid by the use of the premises insured for purposes or occupations enumerated in the conditions annexed to the policy as belonging to the same class with those specified in the policy, but not stated or set out as being purposes or occupations to which the insured intended to appropriate the buildings insured; that is, whether, in a policy upon a building, stated in the policy as one used for a particular hazardous or extrahazardous risk, the insured might use the premises for any other occupation, not stated in the policy, but coming within the same class of hazards.   But we confine our decision to the precise case of buildings enumerated in the policy, and specified therein as being used only for particular designated occupations, and which, subsequently to the making of the policy, were actually appropriated to the carrying on of a business coming within the class of special hazards, for which special rates of premium are charged, and which was not named or designated in the policy.   It is clear that the latter class of hazards stand on their own peculiar ground, and that the premiums thereon do not come within any rate or tariff common to risks of a particular kind, but are intended in all cases to be the subject of a special agreement and distinct rate of insurance, to be determined on by the parties, according to the circumstances of each particular case.

*Exceptions sustained ; new trial in this court.*


At September term 1854, the parties submitted the case to the decision of the court upon a statement of facts, embodying substantially the facts proved and found by the jury at the former trial, and also the following facts, which were agreed to be true, provided parol evidence would be admissible to prove

them :   The risk was a special risk; the rate of premium paid was that usually charged for special risks, (though there was no uniform rate for such risks,) and higher than the agent had ever before charged on extrahazardous risks.   The rate would be higher on two or more extrahazardous risks than on one; but two rooms occupied for a pail factory and one for a grist mill would not be so great a risk as if all three were occupied for a pail factory.   When two or three kinds of business, all special risks, are carried on in the same building, the rate usually charged would be that chargeable for the greatest risk.   The premium in this case was determined by the hazard of making tubs and pails, which was the greatest of the several special risks in the building insured.   The use of the building for a grist mill was not material to the risk.   The fire, by which the buildings were consumed, originated in the tub and pail factory, which was a separate building from the blacksmith's shop.

*Huntington & Wells,* for the plaintiff, in addition to the points taken by them at the former argument, argued that the opinion already given did not settle this case, because it was founded on the assumption that the property insured was only extrahazardous, whereas it was now agreed to have been a special risk, and taken at the highest rate known to the office ; and that as, by the terms of the policy, the conditions of insurance were to be referred to in order to explain it, and one of those conditions, by stipulating that the policy should be avoided by any use which increased the hazard, implied that any use which did not increase the hazard would not avoid the policy, parol evidence was admissible to show that the risk was not rendered more hazardous, but that the special hazard, taken by the company, was in fact diminished by the substitution of a grist mill in one of the rooms.

They also contended that if the policy was avoided as to the larger building insured, it was still (especially as it was not issued by a mutual insurance company) good as to the blacksmith's shop, which was a separate subject of insurance, and not applied to any other use than the one described.   *Clark* v. *New England Mutual Fire Ins. Co.* 6 Cush. 346.   *Trench* v. *Chenango County Mutual Ins. Co.* 7 Hill, 122.

*Davis & Allen,* for the defendants.

BIGELOW, J.   Upon a careful consideration of this case, in the aspect in which it is now presented by the agreed statement of facts, we are satisfied that the plaintiff is not entitled to recover.   It is conceded that the premises insured, in addition to the purposes specified in the policy, were, at the time of the fire, appropriated to carrying on a grist mill.   This was a distinct use of one of the buildings insured, not assented to by the defendants, for an occupation included in the classes of hazards, annexed to the policy, as a " special hazard."   It was therefore a violation of the express stipulation in the policy, and by its terms avoids the contract.   Nor does it at all affect the result, that this additional unauthorized use of the premises was for a purpose comprehended within the same class of hazards as that which was specified in the policy, and originally covered by the insurance.   The manifest purpose of this stipulation was to prevent any use of the premises for an occupation or business included in any of the classes of risks denominated " hazardous, extrahazardous or special," without the express sanction of the company in writing.   It was not intended to limit the assured, in the use of his property, to the same class of risks as those specified in the policy, and to allow him to change the mode of its occupation, or appropriate the premises to additional uses of the same grade of hazards, at his pleasure.   Such is not the import of the language used in the policy, nor would such a construction of it be just or reasonable.   To prevent the accumulation of hazardous occupations in the same premises, without their assent, was the object which the defendants sought to accomplish by this agreement.   Each distinct use of a building insured, for a purpose or business of a hazardous nature might, in the opinion of the insurers, increase the risk by fire; and this might be so, whether the additional use came within the same kind of hazards as that specified in the policy, or belonged to a higher or lower class.   It was not, therefore, a compliance with this stipulation to use general terms of description, in the application and policy, comprehending various kinds of risks, even of the same class.   The insurance of a building described

only as a mill, a factory, a store, or workshop, without any words designating or limiting the particular uses to which it was to be appropriated, would include a wide range of risks, some of which, if known, the defendants might not be willing to assume. It was necessary to state specifically the business or occupation to be carried on in the premises, and to confine their use to the purposes specified in the policy. By this means the defendants were enabled to ascertain the precise nature of the risks they assumed. But this was not the only object effected by this agreement. It also enumerated the various trades and occupations which should be deemed, under the policy, " hazardous, extrahazardous, and special," and which, if carried on in the premises without the consent in writing of the defendants, should avoid the policy. It thereby put at rest all questions between the parties, as to the different nature of the uses to which buildings might be appropriated, and their materiality to the risk actually assumed by the defendants.

It results from this view of the agreement of the parties, that the objection to the right of the plaintiff to recover does not rest on the ground of misrepresentation or concealment by the assured in the description of the property contained in his application for insurance. But it proceeds solely on the ground that the assured has violated an express stipulation in the policy, by the very terms of which the contract between the parties is at an end. Nor can this stipulation be in any way controlled or modified by reference to the " conditions of insurance " annexed to the policy, so as to open the question whether the use of a grist mill on the premises was material to the risk. These conditions are, by the terms of the policy, to be resorted to, in order to explain the rights and obligations of the parties, only in cases not otherwise specially provided for in the policy itself. The use of the premises insured, for purposes not specified, is a matter expressly provided for in the policy, by a distinct agreement of the parties. It is not, therefore, in any way affected by the provisions embraced in the conditions of insurance.

We can see no reason for applying the doctrine of estoppel to the defendants, on the ground that the assured was misled by

the acts of the agent of the company. In making the application for insurance, he did not act for the defendants, but for the assured. In delivering the policy, although acting as agent for the defendants, he did nothing which can be construed into a waiver of any of the provisions in the policy. It was the written contract, which fixed and determined the rights of the parties, and these could not be varied or changed, in the absence of fraud, by the verbal acts or conduct of the parties or their agents, previously to its execution and delivery. *Barrett* v. *Union Mutual Fire Ins. Co.* 7 Cush. 175. *Lowell* v. *Middlesex Mutual Fire Ins. Co.* 8 Cush. 133.

The policy cannot be held valid for a portion of the risk and invalid for the residue. It was an entire contract, entered into for an entire consideration. The property was insured as one risk, and was in fact closely connected together. It is impossible to say that either portion of the risk would have been taken without the other. Besides, it is expressly agreed that, in case of a breach of the stipulation as to the use of the premises for purposes not specified in the policy, "these presents shall cease and be of no force or effect." The contract was therefore, by its terms, at an end.          *Judgment for the defendants.*